**UNITED STATES of America**

v.

**Samuel WATSON**

**No. CRIM.A.04–392.**

United States District Court,
E.D. Pennsylvania.

Aug. 29, 2005.

Catherine C. Henry, Federal Defenders, Philadelphia, PA, for Samuel Watson.

Karen L. Grigsby, U.S. Attorney's Office, Philadelphia, PA, for United States of America.

## MEMORANDUM OPINION

RUFE, District Judge.

■ On August 15, 2005, Defendant Samuel Watson timely appealed the judgment of sentence in the above-captioned case. The Court submits this opinion in accordance with LAR 3.1 to address the issues it anticipates Watson will raise on appeal.[1]

## BACKGROUND

On February 11, 2005, Watson pleaded guilty to one count of bank robbery in violation of 18 U.S.C. § 2113(a). On June 14, 2004, Watson robbed United Bank at 1500 JFK Boulevard, Philadelphia, Pennsylvania. Watson handed the teller a demand note threatening to shoot her if she did not cooperate.[2] He stole $1940.00 from the bank, but was apprehended shortly thereafter in the vicinity, told the police officer "you got me," and cooperated when the police retrieved the stolen money from his pocket. He would not give his name or a further statement to the police officers, but later that day he was transported to the FBI, where he confessed to the bank robbery and the use of the demand note.

■ Although the United States Sentencing Guidelines (the "Guidelines") are advisory under *United States v. Booker*, —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), when determining a sentence the Court begins by calculating the sentence under the Guidelines, and then tailors the sentence in light of other statutory concerns. The base offense level for robbery is twenty. Two levels are added for robbery of a financial institution, and an additional two levels are added for threatening the victim with death. The parties agreed that Watson was eligible for a three point downward adjustment to the offense level computation based on his acceptance of responsibility and timely notification of his intention to plead guilty. Under U.S.S.G. § 4B1.1, Defendant is a career criminal, adding eight levels to his offense level, and placing him in Criminal History Category VI.[3] Thus, Watson's adjusted offense level is twenty-nine. The statutory maximum sentence for this crime is twenty years incarceration followed by three years of supervised release and a fine of up to $250,000.[4] The recommended Guidelines sentence is 151 to 188 months imprisonment, followed by two to three years of supervised release, and the recommended fine range is $15,000 to $150,000.[5] The United States Department

---

1. The issues raised by Watson's counsel at sentencing are discussed in detail below. At the close of the hearing, Watson, pro se, suggested that it was improper to use his prior convictions as a factor in sentencing. Tr. at 23. It is well settled that the *ex post facto* clause of the United States Constitution does not preclude imposing a higher sentence on recidivist offenders than on first time offenders. *Gryger v. Burke*, 334 U.S. 728, 732, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948); *see also United States v. Bucaro*, 898 F.2d 368 (3d Cir.1990).

2. While the government was unable to produce any of Watson's victims to testify at the sentencing hearing, the Court notes that by its very nature, Watson's crime was a serious and violent offense which would invoke fear and intimidation in victims and witnesses.

3. Watson has fifteen prior convictions dating back to 1971, when he was eighteen years old. These include another conviction for bank robbery and a conviction for robbery of a state liquor store. His criminal history score, which counted only crimes which occurred within fifteen years of the current offense, was seventeen.

4. 18 U.S.C. § 2113(a).

5. *See* Pre–Sentence Report dated April 8, 2005.

of Probation recommended a sentence within the prescribed Guidelines range.

At the August 9, 2005 sentencing hearing,[6] the Government argued that the recommended Guidelines range was reasonable as applied to Watson. At age 52, this is Watson's twenty-ninth arrest and sixteenth conviction. He has been a drug addict since age seventeen, and he was addicted to crack cocaine, with an expensive daily habit, when he committed the bank robbery. Tr. at 14. Furthermore, he has committed crimes even during periods when he reports being drug-free. Tr. at 14.

Watson outlined several factors which, he argued, warranted a downward departure from the recommended Guidelines sentence. Specifically, Watson argued that he has cognitive deficits (borderline mental retardation) and severe health problems (HIV). Tr. at 15–16. Additionally, he claimed that his crime was related to his voluntary cessation of Prozac medication, which he was prescribed for depression.[7]

The Court adopted the facts presented in the Pre–Sentence Report, without objection, and sentenced Watson to 120 months imprisonment followed by three years of supervised release. The Court imposed no fine due to Watson's inability to pay. This sentence falls below the recommended Guidelines range, and is within the statutory maximum.

## DISCUSSION

■ A District Court may depart downward from the Guidelines if the court finds a mitigating circumstance is present to an exceptional degree.[8] Since *Booker*, it is unclear whether the exercise of granting or denying motions for departure is any longer a necessary procedure. What is clear is that the Guidelines are advisory. As such, the Court may impose a sentence outside the Guidelines range if it believes the sentence is "reasonable" given the nature and circumstances of the offense, the personal history and characteristics of the defendant, and the additional factors set forth in 18 U.S.C. § 3553(a).[9]

### 1. *Medical Condition*

In this case, the Court found that Watson's medical condition warranted a sentence lower than the advisory Guidelines range, and would so warrant whether the court applied the Guidelines provisions regarding downward departures or simply arrived at a "reasonable" sentence under the guidance of 18 U.S.C. § 3553(a). Because this area of law is unsettled, we

6. The Court conducted two sentencing proceedings, on May 13, 2005 and August 9, 2005. The proceeding on May 13, 2005 was continued to allow Watson an opportunity to obtain a psychological evaluation and to submit a report to the Court.

7. According to a psychological evaluation performed by Dr. Allan M. Tepper, J.D., Psy.D., which was carefully considered by the Court, Watson's diagnosis includes dysthymic disorder, cocaine abuse, alcohol abuse, and borderline mental retardation. Dysthymic disorder is a mood disorder characterized by chronic depression for two or more years, but without all the symptoms of depression required for diagnosis with a major depressive episode. D. Satcher, M.D., Ph.D., *Mental*

*Health: A Report of the Surgeon General*, Chapter 4, Mood Disorders, *available at* http://www.surgeon general.gov/ library/ mentalhealth/chapter 4/sec3.html.

8. *U.S. v. McBroom*, 124 F.3d 533, 538 (3d Cir.1997).

9. The sentencing statute advises that sentences must be sufficient to: a) reflect the seriousness of the offense; b) promote respect for the law; c) afford deterrence; d) protect the public from defendant's further crimes; and e) provide the defendant with needed educational and vocational training and other correctional treatment in the most effective manner.

discuss the Court's ruling under both procedures.

Under the Guidelines, a downward departure can be granted if an individual has an extraordinary physical impairment.[10] The Court determined that a downward departure was appropriate due to Watson's severe health problems stemming from HIV.[11] Tr. at 18–19. The Court expressed its awareness that even with a sentence of 120 months, Watson may die in prison. Tr. at 18.

Moving to the statutory procedures, after establishing the Guidelines range, the Court considered Watson's serious medical condition and crafted a sentence was sufficient to meet the goals of 18 U.S.C. § 3553(a). Specifically, the Court considered: 1) the seriousness of the offense (Tr. at 17); 2) the Court's need to deter Watson from committing more crimes and to promote his respect for the law (Tr. at 17); 3) the need to adequately punish Watson's conduct (Tr. at 17); 4) Watson's criminal history, including his fifteen prior convictions (Tr. at 10); 5) Watson's failure to learn from prior convictions (possibly due to cognitive limitations, but troubling to the Court nonetheless) (Tr. at 16–17); 6) the need to deter others from committing similar crimes, and to deter others from believing serious illness will excuse criminal conduct (Tr. at 17, 18); 7) Watson's history of substance abuse and of commission of crimes to feed his drug addiction (Tr. at 17); 8) the risk Watson poses to the community and the need to protect the community from further harm[12] (Tr. at 10); and 9) Watson's poor compliance with medical and psychiatric treatment in the community and his obvious need for such treatment, as well as drug and alcohol treatment (Tr. at 11 and 18). The Court is confident that Watson's medical and psychiatric needs can be met by the Bureau of Prisons.

### 2. Mood Disorder

■ The Guidelines discourage downward departures based on a defendant's mental and emotional conditions.[13] Only mental and emotional conditions that are established to an exceptional degree or that in some way make the case different from the ordinary case in which the condition is present may be a basis for departure.[14] To grant a downward departure due to mental conditions under the Guidelines, the Court must consider whether the offense was violent or non-violent, whether the Defendant suffered a significantly reduced mental capacity, whether the defendant's mental incapacity contributed to the commission of the offense, and whether the defendant's criminal record indicates a need for imprisonment to protect public safety.[15] The Court found this was a crime of violence, and that Watson's criminal record indicates a need for imprisonment to protect the public. These findings would preclude downward departure under the Guidelines.

---

10. U.S.S.G. § 5H1.4.

11. Watson has been diagnosed with HIV for over twenty years. When presented with his concerns about his medical treatment at the Federal Detention Center, via a letter dated February 1, 2005, the Court spoke to Assistant Warden Tracey Brown, directed that appropriate evaluation and treatment be provided, and learned the precise nature of Watson's medical condition.

12. The Court was particularly concerned that Watson did not seem able to consider the effect of his actions on his victims and witnesses. Tr. at 9–11.

13. See U.S.S.G. § 5H1.3.

14. McBroom, 124 F.3d at 538.

15. U.S. v. Vitale, 159 F.3d 810, 816 (3d Cir. 1998).

■ Post-*Booker*, the Court may consider any relevant personal characteristics when imposing a sentence. However, the Court finds that nothing in the record regarding Watson's diagnosed dysthymia, for which Watson has received ongoing treatment with anti-depressant medication, was exceptional or warranted a further reduction in his sentence. The Court did order mental health treatment as a component of Watson's imprisonment and supervised release, and further urged Watson to avail himself of available treatment while incarcerated. Tr. at 21–22.

### 3. *Cognitive Limitations*

Dr. Tepper found Watson's intelligence quotient to be 73, placing him in the borderline mentally retarded range. Dr. Tepper noted that past and present factors may have contributed to Watson's current level of cognitive functioning, including his premature birth, his medical condition, and his history of substance abuse. As defense counsel acknowledged, the Court must weight its duty to protect the community against Watson's possible inability to learn from his actions and their consequences, due to his cognitive limitations. Tr. at 16.

The Court found that Watson would not be entitled to a downward departure under the sentencing Guidelines due to his cognitive limitations. To be eligible for a downward departure under the Guidelines, Watson needed to prove, by a preponderance of evidence, that the offense was non-violent, that he suffered a significantly reduced mental capacity, that his mental incapacity contributed to the commission of the offense, and that his criminal history does not indicate a need for imprisonment to protect public safety.[16] The Court found that downward departure due to Watson's borderline intelligence was not

warranted, because his intellectual limitations are not extraordinary, his crime was violent, it does not appear that Watson's cognitive limitations contributed to the commission of the offense, and his criminal record indicates a need for imprisonment to protect the public.

Under non-Guidelines procedures, the Court considered whether his sentence was reasonable in light of his cognitive limitations. The Court expressed concern that Watson has failed to develop adequate respect for the law, despite having been convicted, sentenced and punished *fifteen times* in the past, including once for bank robbery. Tr. at 17. The Court noted that Watson's record normally would warrant a sentence in the *high end* of the Guidelines range. Nevertheless, finding that Watson was more vulnerable than he appeared based on his criminal record alone, the Court did not impose a Guidelines sentence.

### 4. *Drug Addiction*

■ Watson has a history of drug abuse, specifically heroin and crack cocaine addiction, dating back almost thirty-five years. Watson acknowledges having a very expensive crack cocaine habit at the time he robbed United Bank. United States Sentencing Guideline § 5H1.4 specifically precludes departing from the range mandated by the Guidelines based on drug and alcohol dependence.[17]

The Court did not find any facts in this case that warranted a reduced sentence based on Watson's drug addiction. However, the Court did consider Watson's drug addiction when it imposed sentence, and ordered him to attend an aftercare drug treatment program and comply with drug testing while he is on supervised release,

---

**16.** *Vitale,* 159 F.3d at 816.

**17.** *See also U.S. v. Hernandez,* 89 F.Supp.2d 612, 617 (E.D.Pa.2000), *citing U.S. v. Iannone,* 184 F.3d 214, 226 (3d Cir.1999).

**540**

and urged him to avail himself of drug treatment while incarcerated to aid in his rehabilitation. Tr. at 20, 22.

*CONCLUSION*

■ For the foregoing reasons, after hearing and addressing all the issues Watson raised, the Court entered judgment of sentence of 120 months imprisonment. Although under the formerly mandatory Guidelines scheme the Court could not grant a downward departure on the grounds of mental health, cognitive limitations, or substance addiction, the Court did, pursuant to 18 U.S.C. § 3553(a), address and consider *all* of Watson's conditions and characteristics, the nature and circumstances of the offense, and the overall statutory scheme, and imposed a sentence that is "reasonable" under all the facts and circumstances of the case. Watson's age and medical condition were important to the Court's consideration, as were his mental health, cognitive limitations, and substance addiction. The sentence imposed reflects those concerns. It also reflects the minimum sentence sufficient to reflect the seriousness of the offense, promote respect for the law, afford deterrence, protect the public from Watson's future crimes, and provide Watson with needed medical, psychiatric and correction treatment in the most effective manner.