In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 06-1523

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

JAMES D. BULLION,

*Defendant-Appellant*.

———————

Appeal from the United States District Court
for the Southern District of Illinois.
No. 05 CR 30136—**William D. Stiehl**, *Judge*.

———————

ARGUED SEPTEMBER 22, 2006—DECIDED OCTOBER 19, 2006

———————

Before POSNER, ROVNER, and EVANS, *Circuit Judges*.

POSNER, *Circuit Judge*.  The defendant pleaded guilty to being a felon in possession of a firearm. The guidelines range for his offense was 188 to 235 months, but the judge sentenced him to 264 months, and the defendant challenges the sentence as unreasonable. Because it exceeded the guidelines range, there is no presumption that it is reasonable. *United States v. Robinson*, 435 F.3d 699, 701 (7th Cir. 2006). But the standard of reasonableness, introduced by the *Booker* decision, confers broad sentencing discretion. The judge must consider the guidelines but is in no sense bound by them. He is bound only by the statutory sentenc-

ing factors, 18 U.S.C. § 3553(a), which are both numerous and vague, thus giving the judge a great deal of running room. *United States v. DeMaree*, 459 F.3d 791, 795 (7th Cir. 2006); *United States v. Walker*, 447 F.3d 999, 1007 (7th Cir. 2006). There was no basis for the defendant's challenging the exercise of discretion by the sentencing judge in this case—and, we add, in cases like it. Not because there were no mitigating factors, but because the balance that the judge struck between them and the aggravating factors was so far inside the outer bounds of his sentencing discretion as to make the claim of unreasonableness frivolous and the appeal a compelling candidate for an *Anders* brief.

When we put this to the defendant's lawyer at argument, she said that the defendant wanted her to appeal. No doubt; had he not wanted her to appeal, it would have been serious misconduct for her to appeal. But a defendant has no right to file a *frivolous* appeal, and his lawyer has a duty to file an *Anders* brief rather than to argue frivolous grounds for reversal. *McCoy v. Court of Appeals of Wisconsin, District 1*, 486 U.S. 429, 438 (1988); *United States v. Cooper*, 170 F.3d 691, 692 (7th Cir. 1999); *United States v. Osuna*, 141 F.3d 1412, 1415 (10th Cir. 1998); *United States v. Humphrey*, 7 F.3d 1186, 1191 (5th Cir. 1993).

The defendant's frightening criminal history begins with aggravated kidnapping and rape of a minor, the rape of another minor, and another aggravated kidnapping and rape, continues with a conviction of attempted armed robbery and two convictions each of armed robbery and auto theft, and is punctuated by numerous arrests. His criminal career culminated in the offense for which he was convicted in the present case. In the course of an assault on his wife, he fired a sawed-off shotgun, apparently in her general direction, though without hitting her.

The district judge "looked carefully through all the material that's been submitted to me to find some argument for this court to show some leniency in your sentencing. I find none. I think the most important factor that leaps out for consideration is a need to protect the public from you. Because each time you have been released from confinement, you have quickly returned to a life of crime." He mentioned as another consideration in the severe sentence that he gave—a consideration related to both the protective and the retributive goals of punishment—"the list and the nature of these very serious, violent, heinous crimes."

The defendant offers two arguments for why the sentence is unreasonably long. The first is that because of his age (58 at sentencing) and health (he is an insulin-dependent diabetic), the sentence amounts to life in prison. He says that if he were healthy, his life expectancy would be 78; that his diabetes takes 13 years off, reducing his life expectancy to 65; and that a sentence of 22 years will therefore exceed his life span.

The sentencing guidelines state that "age may be a reason to depart downward in a case in which the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration." U.S.S.G. § 5H1.1. In other words, if the defendant is elderly and infirm, he may be harmless, and this bears on the sentencing goal of preventing him (as distinct from deterring him and others) from committing crimes by incarcerating him. In still other words, the older, weaker, etc., the defendant is, the less likely he is to recidivate, and this argues for a shorter sentence. Bullion obviously is not yet elderly, infirm, or for any other reason harmless, but no doubt he will become harmless sooner than would an otherwise identical 20-year-old who received the same sentence.

Bullion's argument is different—not that a point will come at which it no longer serves an incapacitative purpose to keep him in prison, but that age per se is a mitigating factor, as if it were penal policy to encourage the elderly to commit crimes. That argument is unlikely to persuade any judge. In any event it fails on its own terms. Life expectancy is not age at death, but merely *median* (in some versions average) age at death. To have a life expectancy of 78 (the life expectancy from which Bullion begins his analysis) is to have a 50 percent chance of dying before one's 78th birthday and a 50 percent chance of dying after. Thus the fact that Bullion's life expectancy is 65 doesn't mean that he won't live considerably longer. Furthermore, his life expectancy is not 65. The starting point in his computation—78—is the life expectancy of the average American at birth (actually it's 77). Remaining life expectancy increases with every year one lives, and in fact the life expectancy of the average 58-year-old American is not 77 but 84—indeed, doubtless higher, given continued advances in medicine.

As for the reduction due to insulin-dependent diabetes, the critical question, unmentioned by the defendant, is the age of onset—the earlier that is, the shorter the life expectancy. If the defendant became diabetic recently, and so in all likelihood is suffering merely from type 2 diabetes and is therefore taking insulin because he does not control his diet, then the reduction in his life expectancy, according to the source he cites (mysteriously, a study of the life expectancy of Canadian diabetics), is 5 to 10 years. If the average of those numbers, 7.5, is subtracted from 84, the defendant's life expectancy is not 65 but 76.5. A 22-year sentence, if served in full (it need not be—good-time credit would reduce it to 18.7 years) would take him to age 80 or, if he behaves himself, to 76.7; but a person with a life expectancy of 76.5 has a good chance of living to 80. The defendant himself argued in the district court for a 17.5-year

sentence on the ground that he could then hope to be released at 75.5; yet 17.5 plus 65 is 82.5.

The defendant's second argument is that since the tendency to commit crimes, violent and otherwise, diminishes with age (which is true, U.S. Sentencing Commission, "Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines" 12, 28 (May 2004); John H. Laub & Robert J. Sampson, "Understanding Desistance from Crime," 28 *Crime & Just.* 1, 5 (2001); Keith C. Owens, Comment, "California's 'Three Strikes' Debacle," 25 *Sw. U. L. Rev.* 129, 155 (1995); Christopher Slobogin, "Dangerousness and Expertise," 133 *U. Pa. L. Rev.* 97, 121 (1984)), a 58 year old need not be given a 22-year sentence in order to be kept out of circulation until he is safe. That may well be true of the average 58 year old. But given the defendant's unusually violent criminal history and the fact that even an elderly person has enough strength to pull the trigger of a shotgun, the district judge could certainly worry about what the defendant might do in his seventies. The curious implication of the defendant's argument is that no violent criminal should be kept in prison beyond the age of, say, 70, but that there should be no limit for white-collar criminals, since their physical capacity to commit their preferred types of crime does not diminish with age.

But we have gone on at too great a length about the infirmities in the defendant's arguments. These are arguments to address to a sentencing judge, not to an appellate court. No precise weights can be assigned to such factors in the sentencing balance as the dangerousness of the criminal and (as mitigating that dangerousness) his age and ill health. The striking of a balance of uncertainties can rarely be deemed unreasonable, and certainly not in this case.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*