In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1262

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DAVID MICHAEL CRAIG,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 4:11-cr-40066—JPG-1—**J. Phil Gilbert**, *Judge*.

SUBMITTED NOVEMBER 7, 2012—DECIDED DECEMBER 18, 2012

Before POSNER, FLAUM, and KANNE, *Circuit Judges*.

PER CURIAM. The defendant pleaded guilty to four counts of producing child pornography. 18 U.S.C. § 2251(a). He produced them by photographing his repeated sexual assaults on a girl who was a friend of his daughters and sometimes slept over at his house. He obtained additional pornographic images of her by threatening to kill her unless she photographed herself in sexually explicit poses and emailed him the images.

The abuses began when she was 11 years old and continued until she was 14.

Because his total offense level was 43, his guidelines sentence for each count was life. U.S.S.G. ch. 5, pt. A (Sentencing Table). But the judge could not impose that sentence because the statutory maximum sentence for each count of conviction was 30 years. 18 U.S.C. § 2251(e). (It would have been longer had the defendant had previous convictions, but he didn't.) The judge sentenced him to the 30-year maximum on one count and to concurrent sentences of 20 years on each of the remaining three counts, but he ordered that the set of 20-year sentences be served consecutively to the 30-year sentence, making the total sentence 50 years. The judge was entitled to do this. *E.g., United States v. Russell,* 662 F.3d 831, 852-53 (7th Cir. 2011); *United States v. Thompson,* 523 F.3d 806, 814 (7th Cir. 2008); *United States v. Sarras,* 575 F.3d 1191, 1220-21 (11th Cir. 2009); *United States v. Betcher,* 534 F.3d 820, 827-28 (8th Cir. 2008). Indeed, the guidelines tell the judge to sentence consecutively when necessary to bring the total sentence into the guidelines range, even though the sentence would exceed the statutory maximum sentence for any count of which the defendant was convicted, U.S.S.G. § 5G1.2(d), though as the guidelines are no longer mandatory the judge doesn't have to sentence consecutively in that circumstance.

But the judge did sentence consecutively in this case as recommended by the guidelines and as a result the defendant, 46 years old when he was sentenced, will serve 50 years in prison should he live to the age of 96.

His lawyer has scoured the record without success for some ground for attacking the sentence, a guidelines sentence and therefore presumed on appeal to be reasonable. Compelling mitigating factors ignored by the judge have not been shown. The lawyer has filed an *Anders* motion to withdraw as counsel on the ground that the appeal is frivolous; we grant the motion and dismiss the appeal.

POSNER, *Circuit Judge*, concurring. I write separately merely to remind the district judges of this circuit of the importance of careful consideration of the wisdom of imposing de facto life sentences. If the defendant in this case does not die in the next 50 years he will be 96 years old when released (though "only" 89 or 90 if he receives the maximum good-time credits that he would earn if his behavior in prison proves to be exemplary). See 18 U.S.C. § 3624(b); *Barber v. Thomas*, 130 S. Ct. 2499 (2010); U.S. Dept. of Justice, "Legal Resource Guide to the Federal Bureau of Prisons" 13-14 (2008), www.bop.gov/news/PDFs/legal_guide.pdf; Rob Ruth, "Calculating Federal Good Time Credit: How the BOP Turns 54 Days Into 47," *CJA News Blog* (Dec. 29, 2010), http://madisonattorney.com/cjablog/?p=95; Families Against Mandatory Minimums, "Frequently Asked

Questions about Federal Good Time Credit," www.famm.org/Repository/Files/FINAL_Good_Time_ FAQs_10.21.08%5B1%5D.pdf. (All websites cited in this opinion were visited on Dec. 3, 2012.) Maybe 50 years from now 96 will be middle-aged rather than elderly, but on the basis of existing medical knowledge we must assume that in all likelihood the defendant will be dead before his prison term expires.

Federal imprisonment is expensive to the government; the average expense of maintaining a federal prisoner for a year is between $25,000 and $30,000, Notice, Bureau of Prisons, 76 Fed. Reg. 57081 (Sept. 15, 2011), www.gpo.gov/fdsys/pkg/FR-2011-09-15/pdf/2011-23618.pdf, and the expense rises steeply with the prisoner's age because the medical component of a prisoner's expense will rise with his age, especially if he is still alive in his 70s (not to mention his 80s or 90s). It has been estimated that an elderly prisoner costs the prison system between $60,000 and $70,000 a year. Kelly Porcella, Note, "The Past Coming Back to Haunt Them: The Prosecution and Sentencing of Once Deadly But Now Elderly Criminals," 81 *St. John's L. Rev.* 369, 383 (2007).

That is not a *net* social cost, because if free these elderly prisoners would in all likelihood receive Medicare and maybe Medicaid benefits to cover their medical expenses. But if freed before they became elderly, and employed, they would have contributed to the Medicare and Medicaid programs through payroll taxes—which is a reminder of an additional social cost of imprisonment: the loss of whatever income the

prisoner might lawfully have earned had he been free, income reflecting his contribution to society through lawful employment.

The social costs of imprisonment should in principle be compared with the benefits of imprisonment to the society, consisting mainly of deterrence and incapacitation. A sentencing judge should therefore consider the incremental deterrent and incapacitative effects of a very long sentence compared to a somewhat shorter one. An impressive body of economic research (summarized and extended in David S. Abrams, "The Imprisoner's Dilemma: A Cost Benefit Approach to Incarceration," forthcoming in *Iowa Law Review*) finds for example that forgoing imprisonment as punishment of criminals whose crimes inflict little harm may save more in costs of imprisonment than the cost in increased crime that it creates. Ours is not a "little crime" case, and not even the defendant suggests that probation would be an appropriate punishment. But it is a lifetime imprisonment case, and the implications for cost, incapacitation, and deterrence create grounds for questioning that length of sentence.

For suppose the defendant had been sentenced not to 50 years in prison but to 30 years. He would then be 76 years old when released (slightly younger if he had earned the maximum good-time credits). How likely would he be to commit further crimes at that age? As we noted in *United States v. Johnson*, 685 F.3d 660, 661 (7th Cir. 2012), although persons 65 and older are 13 percent of the population, they accounted for only seven-tenths of one percent of arrests in

2010. Last year 1,451 men ages 65 and older were arrested for sex offenses (excluding forcible rape and prostitution), which was less than 3 percent of the total number arrests of male sex offenders that year. FBI, *Uniform Crime Reports: Crime in the United States 2011*, www.fbi.gov/about-us/cjis/ucr/crime-in-the-u.s/2011/crime-in-the-u.s.-2011/tables/table-39. Only 1.1 percent of perpetrators of all forms of crimes against children are between 70 and 75 years old and 1.3 percent between 60 and 69. U.S. Dep't of Health & Human Services, Children's Bureau, "Child Maltreatment 2010" 76 (2010), http://archive.acf.hhs.gov/programs/cb/pubs/cm10/cm10.pdf. How many can there be who are older than 75?

It is true that sex offenders are more likely to recidivate than other criminals, Virginia M. Kendall and T. Markus Funk, *Child Exploitation and Trafficking: Examining the Global Challenges and U.S. Responses* 310 (2012), because their criminal behavior is for the most part compulsive rather than opportunistic. But capacity and desire to engage in sexual activity diminish in old age. Moreover, when released, a sexual criminal is subject to registration and notification requirements that reduce access to potential victims. *Id*. at 320.

As for the benefits of a lifetime sentence in deterring other sex criminals, how likely is it that if told that if apprehended and convicted he would be sentenced to 50 years in prison the defendant would not have committed the crimes for which he's been convicted, but if told he faced a sentence of "only" 30 years he would

have gone ahead and committed them? That he would have deemed the expected punishment cost (roughly, the cost of being imprisoned for 30 years times the probability of being apprehended and convicted) less than the benefit he would derive, in satisfaction of his sadistic sexual urges, from committing these crimes? (There is no indication that he has a propensity to commit other crimes.) Probably he had no idea what his punishment was likely to be if he was caught, for the Justice Department does little to publicize punishment levels for the various federal crimes.

Sentencing judges should try to be realistic about the *incremental* deterrent effect of extremely long sentences. Even unsophisticated persons tend to discount future costs and benefits. Most people prefer to receive a dollar today than a dollar a year from now, even if that future dollar is certain, and likewise they prefer to pay a dollar a year from now than today. If you face a 50 year sentence rather than a 25 year sentence for some crime you're thinking of committing, you consider it heavier punishment but probably not twice as heavy; every year added to the prospective sentence has a lesser deterrent effect than the preceding year of the sentence because it is added on at the end.

Sentencing judges are not required to engage in cost-benefit analyses of optimal sentencing severity with discounting to present value. Such analyses would involve enormous guesswork because of the difficulty of assessing key variables, including one variable that I haven't even mentioned, because I can't imagine how it could be quantified in even the roughest way—the retribu-

tive value of criminal punishment. By that I mean the effect of punishment in assuaging the indignation that serious crime arouses and in providing a form of nonfinancial compensation to the victims.

But virtually all sentencing, within the usually broad statutory ranges—the minimum sentence that the judge could have imposed in this case, by making the sentences on all four counts run concurrently, as he could have done, would have been 15 years, 18 U.S.C. § 2251(e), and the maximum sentence, by making them all run consecutively, as he could also have done, would have been 120 years—involves guesswork. I am merely suggesting that the cost of imprisonment of very elderly prisoners, the likelihood of recidivism by them, and the modest incremental deterrent effect of substituting a superlong sentence for a merely very long sentence, should figure in the judge's sentencing decision.