In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2046

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MICHAEL MORAWSKI,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 CR 342 — **Gary S. Feinerman**, *Judge.*

ARGUED APRIL 14, 2014 — DECIDED JUNE 12, 2014

Before WOOD, *Chief Judge*, and POSNER and FLAUM, *Circuit Judges*.

POSNER, *Circuit Judge*. The defendant pleaded guilty to using the mails to implement a fraud consisting mainly of a Ponzi scheme. 18 U.S.C. § 1341. He was sentenced to 120 months in prison and to pay restitution of slightly more than $18 million. The appeal challenges only the prison sentence. The principal ground of appeal and the only one with sufficient merit to warrant discussion is, in the words of the

opening brief, "the government's failure to adequately demonstrate [the defendant's] responsibility for a large portion of the loss to investors. Mr. Morawski contends that a portion of the loss, for which he was held responsible, occurred as a result of market conditions."

The defendant and another person (a codefendant but not an appellant) owned and operated Michael Franks, LLC, a company that invested in real estate. To finance the business, the company solicited investments both in particular apartment buildings that it represented would yield between a 7 and a 9 percent annual return on investment and in "real estate-based funds" (a form of real estate investment trust (REIT)) that it promised would yield between 14 and 30 percent on the investment annually—a return that the defendants told prospective investors would be "guaranteed" by the defendants' "personal net worth into the millions."

The parties are vague about dates, but apparently the company began operating in 2006 and collapsed in 2011, having raised more than $21 million from a total of 267 investors. About $2.4 million of that amount had been raised after the Illinois Department of Securities had in December 2009 ordered the defendants to stop selling investment contracts.

The investors recovered only about $3.2 million. The defendants paid themselves $2 million, enabling them to indulge such typical fraudsters' extravagances as country club expenditures amounting to $78,000, a brand-new BMW, season tickets to the Chicago White Sox, and a "life coach" for whose services each defendant had paid $5,000 a month. The rest of the $21 million was lost, the scheme having straddled the real estate bubble and bust—housing prices had peaked

in March 2006 and immediately begun to fall. The defend-
ants realized that the properties they had bought would no
longer generate sufficient revenue to pay the investors in
those properties their promised returns. So early in 2008, the
year of the financial crash that precipitated the general eco-
nomic downturn from which the nation is still recovering,
the company began using the new investment money that it
was raising not to invest in real estate but to pay the earlier
investors so they wouldn't realize that their investment was
imperiled and so new money would continue flowing in to
Michael Franks, LLC. That was the Ponzi part of the fraud.
Through quarterly newsletters and other methods of com-
munication, notably a video by the defendant ironically enti-
tled "Transparency," www.youtube.com/watch?v=Igdrt
97IW5k (visited June 12, 2014), the company told the inves-
tors that all was well. The defendant even offered them an
"inspirational quote": "We are guided by our belief that
trust starts with honesty, and that integrity prevails in all
business transactions."

The judge found that the defendant (along with his part-
ner, their liability being joint and several) was responsible
for an "actual loss" to the investors of between $7 million
and $20 million. A loss in excess of $7 million adds 20 of-
fense levels to a defendant's base offense level for fraud, see
U.S.S.G. § 2B1.1(b)(1)(K), and so jacked up the defendant's
offense level to 34 and his guidelines range to 151 to 188
months. The 120-month sentence that the judge imposed
was thus below the range; in giving the defendant this sen-
tencing discount the judge appears to have been motivated
mainly by the defendant's age (56½ at sentencing). The gov-
ernment asked for a sentence "closer to 20 years," which
would have been inappropriate given the defendant's age

and that he had no criminal history. In fairness to the government, it made a strong argument in the district court, though the argument was rejected by the judge, that the defendant should not receive an acceptance of responsibility discount, because he'd refused to tell the government when the Ponzi scheme had begun, blamed others for the fraud rather than himself, and had stalled in turning over all of his financial records to the government. Had the government's argument been accepted, thereby increasing the defendant's offense level from 34 to 37, his guidelines range would have soared to 210 to 262 months. Nevertheless, federal prisons should not be made to double as old-age homes. See *United States v. Johnson*, 685 F.3d 660, 662 (7th Cir. 2012). Anyway the government hasn't appealed from the sentence.

When the judge said that the actual loss to the investors had been between $7 million and $20 million, he didn't mean that he was uncertain what the loss had been; he thought it had been $18.2 million. He mentioned the $7 million to $20 million range because had the loss exceeded $20 million it would have added 22 rather than 20 offense levels to the defendant's base level. U.S.S.G. § 2B1.1(b)(1)(L).

"Actual loss" is defined as "reasonably foreseeable pecuniary harm that resulted from the offense," and "reasonably foreseeable pecuniary harm" is defined in turn as "pecuniary harm that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense." § 2B1.1, Application Notes 3(A)(i), (iv). What may have begun as a bona fide real estate investment company in 2006 morphed into a Ponzi scheme by 2008, and most of the losses to investors occurred between then and the company's collapse in 2011. But $18.2 million was the

district judge's estimate of the total loss to investors, all of which he attributed to fraud, and that was a mistake, although an inconsequential one.

Remember that the defendant offered two kinds of investment opportunity: investment in particular apartment buildings, and investment in a kind of REIT, the "Michael Franks Alternative Fund," that held $5.9 million of the $21.4 million in total investments. The "Alternative Fund" was a fraud from the outset. To attract investment in it, the defendant falsely assured potential investors that the promised 14 percent return was guaranteed (or as his advertising put it, "*GUARANTEED!!!*") by his "personal net worth into the millions." The defendants collected $16.8 million from investors after Michael Franks, LLC became a Ponzi scheme in 2008, and there was also the $2 million the defendants had pocketed. Some of the $5.9 million, and also some of the $2 million, is included in the $16.8 million figure—but not all of it. So the actual loss was more than $16.8 million, but we don't know how much more, the recalcitrant defendant having refused to submit sufficiently detailed financial records to enable either the district judge or us to determine the precise loss in excess of $16.8 million.

Now it's true that having correctly calculated the guidelines sentencing range, the sentencing judge must go on and apply the sentencing factors in 18 U.S.C. § 3553(a). Only after doing that may he decide what sentence to give within the statutory, not the guidelines, sentencing range for the defendant's crime. And the amount of loss caused by a defendant, even if not germane to his guidelines range, is germane to the sentence that the judge will give after evaluating the defendant's criminal conduct in light of the statutory sen-

tencing factors. But the difference between a $16.8 million estimate of loss (and remember the actual loss is more than that) and an $18.2 million estimate is too small to have affected the sentence in this case. It had no effect on the guidelines sentencing range and the defendant has not challenged the award of $18.2 million in restitution. The judgment is therefore

AFFIRMED.