In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 15-3584

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ROBERT J. MILLER,

*Defendant-Appellant.*

---

Appeal from the United States District Court for the
Central District of Illinois.
No. 3:09-cr-30039-RM-BGC-1 — **Richard Mills**, *Judge.*

---

SUBMITTED MAY 23, 2016 — DECIDED AUGUST 10, 2016

---

Before WOOD, *Chief Judge*, and POSNER and ROVNER, *Circuit Judges.*

POSNER, *Circuit Judge.* The defendant pleaded guilty to possessing crack cocaine with intent to sell it, in violation of 21 U.S.C. § 841(a)(1), and in 2010 he was sentenced to 210 months' imprisonment (the bottom of the applicable guidelines range), which the district judge reduced by 20 percent—to 168 months—the following year at the request of

the government in exchange for cooperation given to it by the defendant.

Four years later the defendant sought a further reduction in his prison term, to 134 months, because Amendment 782 to the Sentencing Guidelines had made a retroactive two-level reduction in the guidelines sentencing range that had been applicable when he was sentenced. See U.S.S.G. § 1B1.10(d). The comments accompanying the amendment say that in deciding whether to grant such a motion the district judge *must* consider "the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment" and *may* consider the defendant's post-sentencing conduct. U.S.S.G. § 1B1.10 Application Notes 1(B)(ii), (iii).

The government acknowledged that the change in the guidelines range authorized the 34-month sentence reduction that the defendant's lawyer had asked for, but nevertheless opposed it, arguing that according to statements by witnesses the defendant had been at times armed while engaged in his illegal drug dealing, and furthermore that over a period of almost six years during his current imprisonment he had committed five disciplinary infractions: two for possessing homemade alcohol, two for possessing an item usable as a weapon, and one for destroying property. Yet the alcohol infractions had occurred before the government had requested and the judge had ordered the first reduction in the length of the defendant's sentence but had not dissuaded the government from moving for the 20 percent reduction in the defendant's sentence, which the judge had granted.

Yet the judge was persuaded to deny the defendant's latest motion for a reduction in his sentence, though he didn't rely on the evidence that the defendant had been armed in some of his drug dealing. Instead he emphasized that the disciplinary infractions had "occurred relatively recently" (which was untrue; the most recent one had occurred three years earlier) and were "serious" (which may not have been true of the two alcohol offenses, or at least may not have been thought by the government to be true when it sought the 20 percent sentence reduction), and that the defendant "remains a significant danger to the community," though the real question is whether he is likely to *remain* a significant danger to the community when he is released, which won't be for another five years or so even if he receives the further reduction that he's asking for. And the court did not explain why the two alcohol offenses were now to be counted against the grant of a sentence reduction when they had not been previously.

The defendant points out that the judge did not consider his positive achievements in prison, such as the reduction in his security classification from high to medium and his completion of a number of vocational and adult-education courses, which will help him to obtain his GED. In fairness to the judge, the defendant did not submit in the district court certificates documenting his enrollment in the courses. But he has submitted them on appeal, and though that is irregular it is notable that the government doesn't question their authenticity. Although litigants generally are not allowed to bypass the district court and present evidence for the first time to the court of appeals, see Fed. R. App. P. 10(e); *United States v. Elizalde-Adame*, 262 F.3d 637, 640–41 (7th Cir. 2001), we've allowed exceptions. See *Brown v.*

*Watters*, 599 F.3d 602, 604 note 1 (7th Cir. 2010) ("although we generally decline to supplement the record on appeal with materials not before the district court, we have not applied this position categorically"); *Ruvalcaba v. Chandler*, 416 F.3d 555, 562 note 2 (7th Cir. 2005); Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 3956.4 (4th ed. 2008; 2016 supplement); George C. Harris & Xiang Li, "Supplementing the Record in the Federal Courts of Appeals: What If the Evidence You Need Is Not in the Record?," 14 *J. Appellate Practice & Procedure* 317, 323, 332 & note 50 (2013).

Apart from the fact that the government does not question the certificates' authenticity and could not have objected to their admission in the district court had they been introduced there, the failure to submit them in that court was the fault not of the defendant but of his lawyer. The lawyer knew about the certificates—he had written his client eight days after filing his motion for a further reduction in the defendant's sentence, acknowledging receipt of his "awards and certificates." But instead of passing this information on to the district court, or using it to counter the government's response in opposition, the lawyer simply told the defendant that he would put digital copies of the documents "into our file for use in any hearing that may be held in reference to your contested sentence reduction." We can't begin to understand why, rather than sit back waiting for a hearing that never happened, the lawyer didn't use the documents to help support his client's motion to reduce sentence. Had the lawyer followed his client's instructions the district judge would have seen the certificates and the defendant's case would have been strengthened. And before deciding that reducing the defendant's sentence would pose a danger to society, the

judge could have asked the government for a statement by the prison warden concerning the defendant's current behavior in prison, an inquiry that would probably have yielded information about the defendant's efforts to obtain a GED.

It's true that the client is usually held to answer for the mistakes of his lawyer, but the mistake in this case has been so easily rectified on appeal by the now lawyerless appellant that we think it should be overlooked. Since the district judge might decide to grant the sentence reduction once he's assured that the defendant has taken courses toward the GED, since the judge erred in describing the defendant's disciplinary infractions as recent, and since he seems not to have considered whether the defendant is likely to remain a danger to the community when he is released from prison, years from now, we vacate the judgment and remand the case for further proceedings consistent with our opinion.

VACATED AND REMANDED