**UNITED STATES COURT OF APPEALS**

**July 11, 2017**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

JAMES EARL MERIDYTH,

      Defendant - Appellant.

No. 16-2037
(D.C. No. 2:00-CR-00557-LH-1)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH**, Chief Judge, and **HARTZ**, Circuit Judges.[**]

James Meridyth, a convicted drug trafficker, has twice moved to reduce his

prison sentence based on retroactive amendments to his Sentencing Guideline

range. The district court partially granted both of Meridyth's motions. The first

time, the district court reduced his sentence by one-sixth. The district court cited

Meridyth's extensive criminal history and disciplinary infractions in prison as

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] Per the court's June 13, 2017 Order, The Honorable Bobby R. Baldock, who attended the April 27, 2017 oral arguments for this case, determined it was necessary to recuse, and he does not participate in this order and judgment.

reasons for not reducing his sentence further. Meridyth appealed and we affirmed the sentence-reduction order.

After a second request for a sentence reduction, the district court again reduced Meridyth's sentence by one-sixth, citing the explanation it provided the first time. Meridyth contests the explanation the district court supplied, arguing he has avoided prison disciplinary infractions since his first sentence reduction. In his view, that means he should not have received the same proportional reduction he did the first time, when that reduction expressly accounted for his infractions. He thus argues, in effect, that the district court was legally required to credit his improved conduct in prison by granting him a proportionally more generous reduction than the first reduction.

We disagree, and **AFFIRM** the district court's sentence-reduction order. Nothing indicates the district court abused its discretion when it reduced Meridyth's sentence by one-sixth. No legal authority requires the district court to grant a proportionally more generous reduction when a prisoner's disciplinary record improves. Moreover, the district court adequately explained the basis for its sentence.

## I. Background

A jury convicted Meridyth of three counts of violating federal drug trafficking laws. The district court imposed a 360-month prison sentence, the

Sentencing Guidelines minimum. We subsequently affirmed his conviction. *See United States v. Meridyth*, 364 F.3d 1181 (10th Cir. 2004).

In 2014, after the Sentencing Commission amended the Guidelines to reduce the relevant offense levels, Meridyth sought a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2). Although the amendments lowered Meridyth's guidelines range to 235–293 months, the district court ultimately reduced Meridyth's sentence from 360 months to 300 months—a one-sixth reduction. The court explained its decision in a detailed memorandum opinion, citing Meridyth's extensive criminal history and disciplinary infractions in prison since commencing his imprisonment in 2003.

Meridyth then appealed the sentence-reduction order, arguing the district court abused its discretion by sentencing him above his amended guidelines range. We disagreed, finding no abuse of discretion in the court's reasoning or the sentence imposed. *United States v. Meridyth*, 573 F. App'x 791 (10th Cir. 2014) (unpublished).

After his first appeal, the Sentencing Commission amended the Guidelines to further reduce the relevant offense levels. The new amendments lowered the guidelines range to 188–235 months. And Meridyth sought another sentence reduction. The district court granted his motion, but only reduced Meridyth's sentence from 300 months to 250 months—the same one-sixth reduction the court had previously granted.

Once again, the court wrote a memorandum opinion explaining its decision. The court re-examined the history outlined above, and then concluded:

> While recognizing that the Bureau of Prisoners has not reported any further misconduct by Defendant [in the preceding four years], the [c]ourt again finds that a full reduction in Defendant's sentence is not appropriate. For the reasons stated fully in its Memorandum Opinion of December 10, 2013, the [c]ourt finds that a partial reduction of Defendant's sentence is appropriate and by a contemporaneously entered Order, his sentence will be reduced to 250 months imprisonment.

R., Vol. 1 at 193. And once again, Meridyth appealed to this court.

## II. Analysis

Meridyth contends a one-sixth sentence reduction cannot be an appropriate response to both of his sentence-reduction motions, because his circumstances changed between the two. At the time of his first sentence reduction, argues Meridyth, he had engaged in recent misconduct in prison, and the government opposed any reduction at all. But at the time of his second motion, there was no recent misconduct, and the government did not oppose his motion. Moreover, Meridyth submitted a letter to the district court accompanying his second motion, in which he wrote that he had matured in prison, overcome his struggles with mental-health issues, and was earnestly attempting to rehabilitate himself (for example, by pursuing his GED).

A district court may reduce a sentence "based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C.

§ 3582(c)(2). The statute leaves the decision to reduce a sentence in the discretion of the district court: "The court *may* reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* (emphasis added). The relevant policy statement also provides that "the court *may* reduce the defendant's term of imprisonment as provided by 18 U.S.C. § 3582(c)(2)" if a reduction is consistent with the policy statement. USSG § 1B1.10(a)(1) (emphasis added). The accompanying application notes provide that the court "shall consider" the factors in § 3553 as well as the nature and seriousness of any threat to public safety. *Id.* § 1B1.10, cmt. n. 1(B). In addition, the court "*may* consider" the defendant's post-sentencing conduct. *Id.* (emphasis added).

We review a district court's decision to grant or deny a § 3582(c)(2) motion for an abuse of discretion. *United States v. Chavez-Meza*, 854 F.3d 655, 657 (10th Cir. 2017). "We 'do not disturb decisions entrusted by statute or other rule of law to the discretion of a district court unless we have a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'" *Chavez-Meza*, 854 F.3d at 659 (quoting *United States v. Ruiz–Terrazas*, 477 F.3d 1196, 1201 (10th Cir. 2007)).

The sole issue before us is whether the district court abused its discretion by granting a one-sixth reduction in response to Meridyth's second § 3582(c)(2) motion, even though Meridyth had improved his prison conduct and purportedly taken steps toward rehabilitation.[1]  [Aplt. Br. at 2.]

We see nothing in the district court's approach that amounts to a "clear error of judgment" or that "exceeded the bounds of permissible choice."  No legal authority *requires* the court to assign a certain weight to a defendant's conduct in prison.  Indeed, the Sentencing Guidelines expressly do *not* require district courts to consider post-sentencing conduct.  *See* USSG § 1B1.10, cmt. n. 1(B)(iii) ("The court *may* consider post-sentencing conduct of the defendant . . . ." (emphasis added)); *but cf., e.g.*, *id.* cmt. n. 1(B)(i) ("[T]he court *shall* consider the factors set forth in 18 U.S.C. 3553(a) . . . ." (emphasis added)).

Apart from cases discussing this court's jurisdiction and the appropriate standard of review, Meridyth's briefs only cite two cases.

---

[1]  We grant Meridyth's April 21, 2017 sealed motion to supplement the record on appeal only to the extent it involves materials that were presented to the district court.  "Federal Rule of Appellate Procedure 10(e) authorizes the modification of the record only to the extent it is necessary to 'truly disclose[ ] what occurred in the district court.'  This court will not consider material outside the record before the district court."  *United States v. Kennedy*, 225 F.3d 1187, 1191 (10th Cir. 2000) (citation omitted) (quoting Fed. R. App. P. 10(e)).  Although in rare circumstances "we have an inherent equitable power to supplement the record on appeal," *id.* at 1192, we decline to exercise that power here.

First, Meridyth cites *Pepper v. United States*, 562 U.S. 476, 481 (2011). But *Pepper* is not on point. *Pepper* held that "when a defendant's sentence has been set aside on appeal, a district court at resentencing may consider evidence of the defendant's postsentencing rehabilitation and that such evidence may . . . support a downward variance" from the guidelines range. *Id.* at 481. As a threshold matter, as a case about resentencing, *Pepper* has no bearing on § 3582(c)(2) sentence-reduction motions.[2] But even if it were on point, it would not get Meridyth very far: no one debates the proposition that a district court *may* consider the defendant's post-sentencing conduct in sentence-reduction proceedings. *See* USSG § 1B1.10, cmt. n. 1(B)(iii) ("The court may consider post-sentencing conduct of the defendant . . . ."). And that is the proposition for which *Pepper* stands.

---

[2] As the Supreme Court explains in *Dillon v. United States*, 560 U.S. 817, 825 (2010), § 3582(c)(2) proceedings are different from the "resentencing" proceedings discussed in *Pepper*. *See id.* at 825 ("The language of § 3582(c)(2) belies Dillon's characterization of proceedings under that section. By its terms, § 3582(c)(2) does not authorize a sentencing or resentencing proceeding."), 826 ("Section 3582(c)(2)'s text, together with its narrow scope, shows that Congress intended to authorize only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding."); 827 ("Because reference to § 3553(a) is appropriate only at the second step of this circumscribed inquiry, it cannot serve to transform the proceedings under § 3582(c)(2) into plenary resentencing proceedings."); 831 ("As noted, § 3582(c)(2) does not authorize a resentencing. Instead, it permits a sentence reduction within the narrow bounds established by the Commission."); *see also Pepper*, 562 U.S. at 490 (directing readers to the portion of *Dillon* that distinguishes § 3582(c)(2) proceedings from plenary resentencing proceedings). *Compare* Aplt. Br. at 14 (citing *Pepper* as if it were a case about sentence reduction); Aple. Br. at 12 (referring to sentence-reduction proceedings as "resentencing[s]"); Reply Br. at 3 (same).

Second, Meridyth cites a Seventh Circuit case, *United States v. Miller*, 832 F.3d 703 (7th Cir. 2016). Although *Miller* is a sentence-reduction case, it is no more helpful here, because the facts are easily distinguishable. *Miller* involved an attorney who completely failed to submit evidence of the defendant's positive achievements in prison to the district court. *Id.* at 704. The Seventh Circuit objected to the district court's characterization of three-year-old disciplinary infractions as ones that had "occurred relatively recently" and were "serious." *Id.* And the Seventh Circuit noted that the district court had failed to discuss whether the defendant would be "likely to *remain* a significant danger to the community when he is released." *Id.* In light of these three shortcomings, the Seventh Circuit remanded. *Id.* at 805.

Here, by contrast, Meridyth does not allege that the district court did not have all the relevant evidence in front of him. Nor did the district court mischaracterize the chronology of the disciplinary infractions; as we explain below, the district court was aware of Meridyth's improved behavior. *See* R., Vol. 1 at 193 ("[R]ecognzing that the Bureau of Prisons has not reported any further misconduct by Defendant since March 2012 . . ."); *see also* R., Vol. 1 at 137 (noting the dates of each disciplinary infraction and noting that Meridyth "has been discipline free since March 1, 2012"). And the district court extensively considered whether Meridyth would be a significant danger to the community when he is released. *See* R., Vol. 1 at 135–36 (explaining that

Meridyth "basically engaged in a pattern of criminal conduct for his entire adult life" and rejecting Meridyth's assertion that "this past conduct is less relevant because of its age").

In any event, the record makes clear that the district court was aware that Meridyth had stayed out of trouble in prison since his first sentence reduction. Far from failing to consider Meridyth's recent prison record, the district court expressly acknowledged it. *See* R., Vol. 1 at 193 ("[R]ecognizing that the Bureau of Prisons has not reported any further misconduct by Defendant [in the preceding four years] . . . ."). And although Meridyth contends that the district court "did not know of [Meridyth's improvement in his mental health issues and his educational efforts] when it last acted," the record reveals Meridyth presented similar arguments in his first sentence-reduction proceedings. *See* R., Vol. 1, at 10–12 (arguing that "Meridyth has made concerted efforts to better himself during his period of incarceration," including earning several certificates, and emphasizing his "recent and on-going self-improvement efforts"). Meridyth moreover concedes that only three of the fifteen programs and classes in which he participated occurred after the first sentence reduction. *See* Aplt. Br. at 10.

The district court's first sentence reduction opinion goes into considerable detail regarding its decision. It discusses the underlying offense. R., Vol. 1 at 130–31. It lists the factors a court may consider—including post-sentencing conduct—as well as the § 3553(a) factors the court is required to consider. R.,

Vol. 1 at 132–36.  Recounting Meridyth's extensive criminal history, the court describes him as a danger to the community.  R., Vol. 1 at 135–36; *see* USSG § 1B1.10, cmt. n. 1(B) (providing that the court "shall consider" the nature and seriousness of any threat to public safety.).  After listing Meridyth's prison disciplinary infractions, the court notes that "Meridyth's pre- and post-sentencing behavior . . . is of major concern to the [c]ourt and heavily influences its determination of any reduction in his sentence."  R., Vol. 1 at 137.

In context, it is evident that the post-sentencing infractions were not the most important factor in the court's first sentence-reduction decision.  The court noted that the Bureau of Prisons described Meridyth's behavior as "relatively decent," that he had been incident-free for a year and a half, and that he had "good rapport with staff and inmates."  *Id.*  The court also noted that Meridyth was "working closely with psychology services regarding his medication and self-improvement programming," and that he had gained more than five years of work experience.  *Id.*

The one-sixth reduction, explained the court, reflected several considerations: (1) the defendant's "criminal history and characteristics," (2) "his behavior in prison," (3) "the need . . . to promote respect for the law," (4) the need to "provide adequate deterrence," and (5) the need to "protect the public from further crimes of the [d]efendant."  R., Vol. 1 at 139.

In sum, the district court did not abuse its discretion by referring back to its original explanation. The defendant's criminal history and characteristics remained unchanged. The need to promote respect for the law, provide adequate deterrence, and to protect the public remained unchanged. Meridyth's record of prison infractions remained basically unchanged, except that some additional time had passed since his last infraction. But the same incidents were on his record as before; and just as before, his recent record reflected an effort at rehabilitation. Given that the circumstances were largely the same as before, we cannot say the district court should have had to discard its thorough explanation from just a couple years prior only to recapitulate it.

And it is worth emphasizing in closing that Meridyth benefited considerably from the district court's decision. Sentence reduction is an "act of lenity." *Dillon*, 560 U.S. at 828. More than four years were taken off his sentence. The district court has not penalized Meridyth—Meridyth simply wishes the act of lenity had gone further.

## III. Conclusion

The decision of the district court is therefore AFFIRMED.

ENTERED FOR THE COURT

Timothy M. Tymkovich
Chief Judge

-11-