# United States Court of Appeals
## For the First Circuit

No. 17-1530

UNITED STATES OF AMERICA,

Appellee,

v.

WILFREDO RODRÍGUEZ-ROSADO, a/k/a La Gorda, a/k/a Mogoyo, a/k/a
Pitin, a/k/a Mogo,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Thompson, Circuit Judges.

Vivianne M. Marrero, Assistant Federal Public Defender
Supervisor, Appeals Section, and Eric Alexander Vos, Federal
Public Defender, on brief, for appellant.
Thomas F. Klumper, Assistant United States Attorney Senior
Appellate Counsel, Mariana E. Bauzá-Almonte, Assistant United
States Attorney Chief, Appellate Division, and Rosa Emilia
Rodríguez-Vélez, United States Attorney, on brief, for appellee.

November 28, 2018

**THOMPSON**, <u>Circuit Judge</u>.

### Conducting the Performance

Like the conductor of a grand symphony orchestra who sets tempos, cues ensemble members, and modulates sounds, Wilfredo Rodríguez-Rosado led his coworkers at American Airlines (and others) in a decade-long, Puerto Rico-based, drug-smuggling conspiracy. Performing as Rodríguez's instruments of crime, the band of dope peddlers each played different, though no less necessary, roles. Some jam-packed suitcases with cocaine; others drove the cases to airports. Some weaseled the cocaine-stuffed suitcases aboard airplanes; others tiptoed them out for distribution. With drugs and cash zipping up and down the United States, Rodríguez and his squad of oh-so-sneaky smugglers trafficked ultimately more than 9,000 kilograms of cocaine.

### Breaking Up the Band

But drug-smuggling isn't music to everyone's ears, least of all law enforcement. In early 2009, after seizing six suitcases, chockfull of cocaine, a combined federal and state taskforce busted Rodríguez and his group. And later that year, a grand jury charged them with various drug offenses. These crimes carried serious time. Eventually, Rodríguez owned up to the wrongdoings; he pleaded guilty to participating in a conspiracy to possess with intent to distribute between 15 to 50 kilograms of cocaine. <u>See</u> 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), 846.

Because Rodríguez accepted some responsibility for the offense, the government in turn recommended a sentence of 14 to 17.5 years — a substantial sentence, yes — but a fraction of the time he could've served otherwise.[1]  The judge, consistent with the government's proposed sentence range, gave Rodríguez 15 years' incarceration.

### Auditioning for a Better Deal

A few years later, Rodríguez got a shot at nabbing an even lower sentence.  In 2014, the U.S. Sentencing Commission adopted Amendment 782.[2]  See United States Sentencing Commission, Guidelines Manual, App. C Supp., Amend. 782 (reduction), 788 (retroactivity) (Nov. 2018).  That change, which applies retroactively, reduced by two levels the base offense level for most drug offenses, including the crime to which Rodríguez pleaded guilty.  See id.  Days after Amendment 782 took effect, little wonder Rodríguez filed a motion seeking a reduced sentence.[3]

---

[1] According to the plea agreement, the mandatory-minimum for Rodríguez's crime was "a term of imprisonment of at least ten (10) years, but no more than life; and a term of supervised release of at least five (5) years."  In addition, the sentencing court also could have imposed a fine up to, but no more than, $4,000,000.00.

[2] The U.S. Sentencing Commission is an agency that issues and updates the federal sentencing guidelines.  See 28 U.S.C. § 994.

[3] As both parties observe, applying Amendment 782 to Rodríguez would reduce his guideline sentence range from 168-210 months to 135-168 months.  See USSG § 2D1.1(c)(4) (2016); see also Rodríguez I, 854 F.3d at 123.

But Rodríguez was not alone.  Indeed, in the wake of Amendment 782's ratification, thousands of prisoners nationwide, jailed for drug crimes, suddenly became eligible for reduced sentences.  See United States v. Rodríguez-Rosado ("Rodríguez I"), 854 F.3d 122, 123 (1st Cir. 2017)(noting that "Amendment 782, as expected, generated thousands of sentence reduction motions").  That the possible early release of tens of thousands of incarcerated people would strain the criminal justice system was not lost on the Sentencing Commission.  See USSG App. C, Amend. 788 at 80-82 (imposing a one-year delay on the filing of Amendment-782 motions to "permit courts and probation offices to effectively supervise the increased number of defendants," ensure released offenders' successful reentry to society, and promote public safety).  Nor was it lost on the Puerto Rico federal court.  See Rodríguez I, 854 F.3d at 123 (indicating that "the Puerto Rico District Court" had to brainstorm how to "handl[e] the impending onslaught of motions").  Indeed, just five days after Amendment 782's adoption, the Puerto Rico federal court devised a way to keep pace with the motions — a formal, multi-step procedure called Administrative Directive 14-426 ("AD 14-426").  See In Re: USSG Amend. 782, Misc. No. 14-426 (ADC)(D.P.R. Nov. 6, 2014).

The procedure went something like this:  After a defendant files a motion seeking a reduced sentence under Amendment 782, the clerk of the court automatically refers the case to a

- 5 -

magistrate judge for "initial screening." The magistrate judge is tasked with figuring out whether the defendant is eligible for a lower sentence, and nothing more. Should the magistrate judge find the defendant ineligible for less prison time, the motion fails.[4] But if the magistrate judge finds the defendant possibly eligible for an earlier release date, the motion advances. At stage two, the government, defense counsel and probation must "meet to discuss the case" and attempt to "reach a stipulat[ed]" agreement. And if that falls short, the district court, based on the parties' memoranda, is charged with resolving the motion.

## Marching To A Different Tune

The AD 14-426 process seems as clear as a bell. And yet, after Rodríguez filed his motion, the district court — for whatever reason — ignored the process: It leaped ahead of the magistrate judge before he could chime in with an eligibility determination, sua sponte denying the motion. As grounds for rejecting the motion, the district court emphasized Rodríguez's "maximum leader[ship]" role in "an elaborate drug trafficking organization that operated for many years packaging and transporting over 9,000 kilos of cocaine."

---

[4] A dissatisfied defendant may object to the magistrate judge's eligibility determination to the presiding district judge within 14 days.

Even so, about a month after the district court denied Rodríguez's motion, the magistrate judge reviewed Rodríguez's motion all the same. And he determined Rodríguez may be eligible for a lower sentence.[5] So as AD 14-426 contemplates, the magistrate judge handed the motion back to the district court for the next stage of the process.

## Rodríguez I

The district court in a text order referencing its initial denial again tossed Rodríguez's motion, rejecting the magistrate judge's report and recommendation. Twice spurned in his quest for a sentence reduction, Rodríguez appealed his case to us. There, in Rodríguez I, we faced the question, among others, of whether the district court had struck the wrong note by not following its own internal, administrative rules, AD 14-426, when it denied Rodríguez's motion. See Rodríguez I, 854 F.3d 122. And we said yes. Against the case's backdrop of "unique circumstances," we determined that "the prudent course" was to vacate and remand, so the district court could comply with its own administrative order in resolving Rodríguez's motion. Id. at 126. In explaining our reasoning, we noted that since Amendment 782 had taken effect, the Puerto Rico district court had gained a good

---

[5] The record does not reflect whether the magistrate judge was aware of the district court's earlier rejection of Rodríguez's motion.

deal of experience handling sentence-reduction motions under AD 14-426. Id. at 126. Therefore we reasoned remand would permit the district court to apply "the wealth of experience that it ha[d] gained adjudicating motions to reduce sentences" under AD 14-426. Id. And finally, because the ultimate issue of whether to grant a sentence reduction is a question Congress "committed to the sentencing court's sound discretion," United States v. Zayas-Ortiz, 808 F.3d 520, 523 (1st Cir. 2015), we uttered not a word on "the proper outcome on remand." Rodríguez I, 854 F.3d at 126.

On the very same day we handed down our judgment in Rodríguez I, the district court, seemingly on cue, swiftly heeded the guidance we spelled out. The district court ordered the parties to "file their positions and recommendations as to whether [Rodríguez's] sentence may be reduced pursuant to Amendment 782." As AD 14-426 provides, the parties met a few days later to discuss the case, hoping to reach a stipulated agreement. But to no avail. So, consistent with the district court's administrative order, the parties filed memoranda hewing to the court's deadline.

**Still Marching To A Different Tune**

Having now dotted the "i's" and crossed the "t's," the district court at last got its rightful turn to act under AD 14-426. And it missed nary a beat. On the same day the parties filed their briefs, the district court denied the motion, sending Rodríguez away empty-handed for a third time. As justification

- 8 -

for the denial, the district court pointed yet again to its original text order rejecting Rodríguez's motion.  Regrettably, when the district court denied Rodríguez's motion this last time, the matter was still alive and well in our hands; we hadn't yet issued our mandate returning the case to the district court.  Of course, the mandate did eventually issue – yet that happened several days *after* the district court had already lowered the baton.

### Taking It From The Top Again

That brings us to today's crescendo, marking round two of this case before this court.  Rodríguez now appeals, advancing three basic arguments.  Rodríguez first charges the district court lacked jurisdiction.  Next, even if the district court had jurisdiction despite our unissued mandate, he claims the district court abused its discretion in denying his motion.  And to that end, assuming we find an abuse of discretion, he lastly presses us to remand his case to a different district court judge.  The government, for its part, disagrees in toto.  We assess each contention in turn, and along the way, note more facts as necessary to our analysis.  But when all is said and done, because Rodríguez's assertions fall flat, we *affirm*.

### The Divestiture Rule

Because the district court denied Rodríguez's motion before this court had issued its <u>Rodríguez I</u> mandate, both

Rodríguez and the government, singing from the same songsheet, rightly agree that the court violated the divestiture rule. This rule provides that filing a notice of appeal, for the most part, shifts "jurisdiction" from the district court to the court of appeals. Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982). But whether the district court order may all the same stand is a bone of contention between the parties.

To hear Rodríguez tell it, because the district court lacked "jurisdiction" under the divestiture rule, the court's denial order is a legal nullity, with no operative effect. Pushing back, the government counters that the divestiture rule is not a per se jurisdictional rule and so, because applying the rule here would defeat its purpose of judicial economy, we shouldn't do so. Reviewing de novo, see Fafel v. DiPaola, 399 F.3d 403, 410 (1st Cir. 2005), we discern no reversible error.

## Guiding Principles

When a party files an appeal in a case, as mentioned earlier, the divestiture rule ordinarily transfers the district court's "jurisdiction" to the court of appeals. United States v. Maldonado-Rios, 790 F.3d 62, 64 (1st Cir. 2015)(citation omitted); United States v. Distasio, 820 F.2d 20, 23 (1st Cir. 1987)(observing that "[a] docketed notice of appeal suspends the sentencing court's power" to act). And "until this court issue[s] its mandate" for a decision, finalizing it, the district court

does not reacquire "jurisdiction" over the case. <u>United States</u> v. <u>Wells</u>, 766 F.2d 12, 19 (1st Cir. 1985); <u>United States</u> v. <u>Rush</u>, 738 F.2d 497, 509 (1st Cir. 1984).

But because the judge-made divestiture rule isn't based on a statute, it's not a hard-and-fast jurisdictional rule. <u>See</u> <u>Kontrick</u> v. <u>Ryan</u>, 540 U.S. 443, 452-53 (2004)(observing that rules of practice and procedure "do not create or withdraw federal jurisdiction" because only Congress has the power to determine subject-matter jurisdiction); <u>United States</u> v. <u>Claiborne</u>, 727 F.2d 842, 850 (9th Cir. 1984)(concluding that the divestiture rule isn't jurisdictional because it's not based on a statute). The rule, rather, is rooted in concerns of judicial economy, crafted by courts to avoid the confusion and inefficiency that would inevitably result if two courts at the same time handled the same issues in the same case. <u>See</u> <u>In re Padilla</u>, 222 F.3d 1184, 1190 (9th Cir. 2000); <u>United States</u> v. <u>Rodgers</u>, 101 F.3d 247, 251 (2d Cir. 1996). Hence its application turns on concerns of efficiency and isn't mandatory. <u>See, e.g.</u>, <u>United States</u> v. <u>Leppo</u>, 634 F.2d 101, 104 (3d Cir. 1980)(rejecting a "ritualistic application of the divestiture rule"); 16A C. Wright, A. Miller, E. Cooper & C. Struve, <u>Federal Practice and Procedure</u>, § 3949.1 n.53 (4th ed. 2018).

We think applying the bench-made divestiture rule today would surely short-circuit its aim of judicial efficiency, and

here's why.  For one thing, as in Rodríguez I, we again wouldn't be reaching the merits of the district court's denial order, notwithstanding our otherwise "compelling interest in the finality of litigation" and judgments.  Aybar v. Crispin-Reyes, 118 F.3d 10, 16 (1st Cir. 1997).  For another thing, with jurisdiction back in its hands, the district court, undoubtedly, would again deny Rodríguez's motion, like every other time it has confronted — and denied — the motion.  And then, chances are that Rodríguez would once more appeal his case to us.  Which would present to us the third variation on the original theme of this case, like an encore, featuring the very same parties, the very same motion, the very same denial order, and the very same arguments on the merits.  That seems to us too much to ask of a rule fashioned to ferret imprudence out of the courts.  See 20 Moore's Federal Practice - Civil § 303.32 (2018)(reasoning that courts ought not apply the divestiture rule when doing so results only in "needless paper shuffling"); see, e.g., United States v. Hickey, 580 F.3d 922, 927 (9th Cir. 2009)(opting against application of the divestiture rule when "no useful purpose would be served by requiring" the district court "to redecide the . . . motions")(citation omitted).  And so,

we decline to apply the divestiture rule to Rodríguez's claim and thus proceed to our merits review.[6]

## The Motion on its Merits

Even if the district court had jurisdiction over the motion, Rodríguez posits the district court abused its discretion by denying it. He advances four broad arguments. Rodríguez's lead contention faults the district court for improperly balancing the 18 U.S.C. § 3553(a) factors, particularly those favoring a reduction.[7] Next he blasts the district court for coldshouldering

---

[6] Let us be crystal-clear: Nothing in our opinion today should be taken as giving district courts the green light to ignore the divestiture rule. The district court in this case rushed the process; it should've awaited our mandate before acting. Ordinarily, our practice in such cases is to vacate the early entry of a district court's order and remand "so that the district court, once its jurisdiction has reattached, may consider the issue...anew." United States v. George, 841 F.3d 55, 72 (1st Cir. 2016). But because the district court here has clearly demonstrated no interest in lowering the defendant's sentence, as explained above, following our usual protocol today would be a waste of time. This opinion is therefore confined wholly to the narrow facts animating the case before us, and in no way diminishes the importance of compliance with the divestiture rule.

[7] The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for the sentence imposed to afford adequate deterrence; (4) the need to protect the public; (5) the need to provide the defendant with educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) the pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims. See 18 U.S.C. § 3553(a).

- 13 -

his post-sentencing conduct.  Then he assails the district court

for grounding its denial order on "factors that had already been

accounted for."  And lastly, he contends the denial of his motion

resulted in an unwarranted sentencing disparity between him and a

codefendant.[8]  The government sees it otherwise.  Reviewing the

denial of Rodríguez's 18 U.S.C. § 3582(c)(2) motion for abuse of

discretion, see United States v. Vaughn, 806 F.3d 640, 642 (1st

Cir. 2015), we perceive no error.[9]

Guiding Principles

A federal court by and large "may not modify a term of

imprisonment once it has been imposed."  18 U.S.C. § 3582(c).  But

---

[8] Rodríguez also maintains that the district court failed to properly follow AD 14-426 because the court failed to use "Form AO 247 in his denial."  That contention is a non-starter. Unfortunately for Rodríguez, because he advances this argument for the first time in his reply brief – and nowhere else – we deem it waived.  See Sandstrom v. ChemLawn Corp., 904 F.2d 83, 86 (1st Cir. 1990)(holding that an argument "not made to the district court or in appellant's opening brief, [but] surfacing only in his reply brief" is waived).

[9] In the "Summary of the Argument" part of his brief, Rodríguez asserts, among other things, that the district court failed to "consider[] the guiding principles and policy statement in USSG § 1B1.10."  Yet Rodríguez never fleshes out this argument.  To the extent Rodríguez is referring to the district court's failure to either (1) assess any danger his early release may pose or (2) consider evidence of his post-sentencing conduct, we address both those issues above.  But if Rodríguez is making different arguments, because he fails to develop these contentions later in his brief, we need not address them.  See, e.g., United States v. Trinidad–Acosta, 773 F.3d 298, 310 n.5 (1st Cir. 2014) (deeming waived arguments alluded to in the brief's summary-of-the-argument section but not developed elsewhere).

if the Sentencing Commission reduces a defendant's sentencing guidelines range, Congress permits a federal court to reduce the defendant's term of imprisonment, "after considering the factors set forth in [§] 3553(a) . . . if such a reduction is consistent with applicable policy statements" issued by the Commission. 18 U.S.C. § 3582(c)(2). Section 3582, however, in no way creates a right to a sentence reduction. See USSG § 1B1.10 comment. (backg'd.) (mentioning that a reduction under § 1B1.10 is discretionary and "does not entitle a defendant to a reduced term of imprisonment as a matter of right").

In determining whether a defendant should receive a sentence reduction, the district court must engage in a two-step inquiry. It first must determine "'the amended guideline range that would have been applicable to the defendant' had the relevant amendment been in effect at the time of the initial sentencing." Dillon v. United States, 560 U.S. 817, 827 (2010)(quoting USSG § 1B1.10(b)(1)). The court then must weigh the § 3553(a) factors "and determine whether, in its discretion, the reduction" is "warranted in whole or in part under the particular circumstances of the case." Id. In addition to the § 3553(a) factors, the district court "shall consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment." USSG § 1B1.10, comment. (n.1(B)(i-iii)). And the court "may consider post-

- 15 -

sentencing conduct of the defendant." Id. "[P]roceedings under 18 U.S.C. [§] 3582(c)(2) and [§ 1B1.10]," however, "do not constitute a full resentencing of the defendant." § 1B1.10(a)(3).

### The Pertinent Factors

Before deciding Rodríguez's motion, the district court had before it Rodríguez's original and reduced guidelines ranges. And the court had at its disposal the parties' "positions and recommendations as to whether defendant's sentence may be reduced pursuant to Amendment 782." The parties, including Rodríguez, in their briefs addressed the § 3553(a) factors; what, if any, danger Rodríguez's early release posed; his mitigating post-sentencing conduct; his educational efforts, his completion of a drug abuse program; and a letter of good behavior from his prison counselor. And in a similar vein, pointing to § 1B1.10, the government's brief expressly advised the district court it had to consider all the § 3553(a) factors. In declining to reduce Rodríguez's sentence, the district court explicitly stated that it had made its decision with "the benefit of the positions of the defendant (Docket No. 1533), the probation officer (Docket No. 1534) and the government (Docket No. 1535)."[10]

We see no basis for reversal. So long as the district court's order and the record as a whole reflects that it considered

---

[10] Rodríguez laments that "[t]he district court's line order" denying his motion was "terse[]," and therefore, insufficient.

all the pertinent factors — as here — we can safely assume it did so. See, e.g., United States v. Vargas-Dávila, 649 F.3d 129, 130 (1st Cir. 2011); United States v. Dávila-González, 595 F.3d 42, 48-49 (1st Cir. 2010); United States v. Turbides-Leonardo, 468 F.3d 34, 40-41 (1st Cir. 2006).  Thus contrary to Rodríguez's suggestion, that the district court highlighted some factors but not others in its denial order doesn't mean the court closed its eyes to them.  What that suggests, on the contrary, is that the district court may have been unimpressed or unpersuaded by the relevant factors it didn't reference.  See United States v. Morrisette, 429 F.3d 318, 325 (1st Cir. 2005)(citing United States v. Martins, 413 F.3d 139, 154 (1st Cir. 2005)).  Our caselaw doesn't require district courts to "mention every § 3553(a) factor nor intone any particular magic words."  United States v. Denson 689 F.3d 21, 28 (1st Cir. 2012)(citation omitted).  Most plausible is that the district court found particularly glaring Rodríguez's

---

This is not reversible error.  We have held numerous times that "brevity must not be mistaken for inattention — especially so when, as here, the sentence falls within guideline range." United States v. Garay-Sierra, 832 F.3d 64, 68 (1st Cir. 2016) (internal quotation marks and citation omitted); see also United States v. Turbides-Leonardo, 468 F.3d 34, 40 (1st Cir. 2006) ("While the court ordinarily should identify the main factors upon which it relies, its statement need not be either lengthy or detailed.") (citing United States v. Navedo-Concepción, 450 F.3d 54, 58 (1st Cir. 2006)). So too here.

"maximum" leadership role, the ginormous amount of drugs he and his group trafficked, the many years the organization operated, and the intricacy of the conspiracy.

Enough said on this; on to the post-sentencing issue.

### Post-Sentencing Rehabilitation Evidence

For his next fanfare, hanging his hat on Pepper v. United States, 562 U.S. 476 (2011), Rodríguez takes the district court to task for failing to consider his post-sentencing rehabilitation evidence. He points to a "detailed letter [from his counselor at the detention center] that one does not ordinarily see was provided to the district court," arguing the district court should have, but failed to, consider it. Multiple errors plague this line of reasoning. As a preliminary matter, as we said earlier, simply because the district court didn't expressly mention Rodríguez's rehabilitative evidence doesn't mean it didn't consider it; the record shows the district court adequately reviewed all the evidence before it, which included Rodríguez's post-sentencing conduct and the letter from his detention center counselor. See Morrisette, 429 F.3d at 325.

Regardless, even if the district court had not considered any of Rodríguez's rehabilitative evidence, Pepper is inapt. In that case, the Supreme Court clarified that a district court confronted with a "resentencing" motion "may consider evidence of the defendant's post-sentence rehabilitation." Id. at

- 18 -

490. *Pepper* is a case about resentencing, so it does not necessarily follow it holds sway in this case — a case about reducing a sentence under § 3582(c)(2).[11]  *See* § 1B1.10(a)(3); *Dillon*, 560 U.S. at 825-28 (holding that *United States* v. *Booker*, 543 U.S. 220 (2005), has no bearing on § 3582(c) proceedings); *see, e.g.*, *United States* v. *Meridyth*, 701 F. App'x 722, 725 (10th Cir. 2017), *cert. denied*, 138 S. Ct. 2002 (2018)(concluding that *Pepper* has no bearing on § 3582(c)(2) sentence-reduction motions).

But in any event, even if *Pepper* was apt, it is a given that it would not get Rodríguez far:  No one — not even Rodríguez himself — contests that *Pepper* plainly says that a district court "may," not must, consider post-sentencing conduct.[12]  *Pepper*, 562

---

[11]  Throughout *Dillon*, the Supreme Court numerous times explains that § 3582(c)(2) sentence-reduction proceedings are different from the "resentencing" proceedings at issue in *Pepper*. 560 U.S. at 825 ("The language of § 3582(c)(2) belies Dillon's characterization of proceedings under that section. By its terms, § 3582(c)(2) does not authorize a sentencing or resentencing proceeding."); *id.* at 826 ("Section 3582(c)(2)'s text, together with its narrow scope, shows that Congress intended to authorize only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding."); *id.* at 827 ("Because reference to § 3553(a) is appropriate only at the second step of this circumscribed inquiry, it cannot serve to transform the proceedings under § 3582(c)(2) into plenary resentencing proceedings."); *id.* at 831 ("As noted, § 3582(c)(2) does not authorize a resentencing. Instead, it permits a sentence reduction within the narrow bounds established by the Commission."); *see also* *Pepper*, 562 U.S. at 490 (pointing to the part of *Dillon* distinguishing between § 3582(c)(2) "sentence-modification proceedings" and "plenary resentencing proceedings").

[12]  Section 1B1.10's commentary further proves the point.  It requires the district court only to weigh public safety factors,

- 19 -

U.S. at 490; see, e.g., United States v. Navarro, 693 F. App'x 459, 460 (7th Cir. 2017)("A district court *may* take into account post-sentencing efforts at rehabilitation in deciding whether a lower sentence is appropriate under § 3582(c)(2), but the court is not required to do so.")(emphasis added); United States v. Parker, 762 F.3d 801, 812 (8th Cir. 2014)(explaining that Pepper does not oblige a district court faced with a resentencing to give lower sentences in light of rehabilitation evidence); see also Black's Law Dictionary (10th ed. 2014)(defining the term "may" as "to be permitted to" do something). Therefore despite Rodríguez's "44 pages of documentation" detailing his post-sentencing rehabilitative conduct, although we might applaud his efforts, unfortunately for him, because nothing required the district court to weigh such mitigating evidence, we detect no error here. Davila-Gonzalez, 595 F.3d at 49 ("Merely raising potentially mitigating factors does not guarantee a lesser sentence."); see also United States v. Anonymous Defendant, 629 F.3d 68, 78 (1st Cir. 2010)(remarking that a district court's failure to assign

---

while it merely "permits," not mandates, the district court to consider post-sentencing conduct when reviewing a sentence-reduction motion under § 3582(c)(2).

particular significance to a specific mitigating factor is not of reversible magnitude).

### Counting Accounted-For Factors

Rodríguez next seems to contend the district court couldn't base its denial of his motion on his "participation and leadership role in the conspiracy," because those "were explicitly taken into account not only in the plea agreement, but also in the PSR calculation of the sentencing guidelines, and by the district court at the time of sentencing."  He relies on United States v. Rosa-Martínez, a non-binding district court opinion.  108 F. Supp. 3d 15, 16 (D.P.R. 2015).  This reliance is misplaced.  Nowhere in Rosa-Martínez does the district court say, let alone imply, that in deciding whether to grant a § 3582(c)(2) reduction, a district court cannot consider the circumstances of a defendant's crime. And we decline to do so here.  Accepting Rodríguez's argument would certainly run smack up against the plain and unambiguous language of § 3582's directive to consider "the factors set forth in section 3553(a) to the extent that they are applicable," which includes (relevant here) "the nature of circumstances of the offense."  See, e.g., United States v. Monday, 390 F. App'x 550, 554-55 (6th Cir. 2010)(rejecting the argument that "a defendant's post-sentencing conduct may not be considered in determining whether to grant a . . . § 3582(c)(2)" motion, because that would "fly in the face" of clear congressional directives).  The bottom line is, because

Rodríguez has failed to show how the district court's consideration of his "participation and leadership role in the conspiracy" was an abuse of discretion, we spot no error on this basis.

Sentencing Disparity

For his final argument, when the district court denied his sentence-reduction motion but granted Luis Padilla-Pérez's, a coconspirator's, sentence-reduction motion, Rodríguez frets that the court created an unwarranted disparity and so erred. But Rodríguez's concern doesn't sing to us. Rodríguez first sketches this argument in a barebones way, in the "Statement of the Case" section of his brief. But he fails later in his brief to put meat on the bones of his skeletal disparity contention. For instance, although Rodríguez tells us he and Padilla-Pérez pleaded guilty to trafficking the same amount of drugs as well as that they both received a leadership role enhancement, he says nothing about "this coconspirator's specific criminal involvement, his criminal history, his career offender status, or his cooperation (if any) with the government." United States v. Rodríguez-Adorno, 852 F.3d 168, 177 (1st Cir. 2017). And he mentions zippo about what sort of leadership role enhancement Padilla-Pérez received. He doesn't even furnish us with Padilla-Pérez's sentence.

On this scant record, we cannot reach a "determination that he and his proposed comparator[] are similarly situated." Id. (citing United States v. Reyes-Santiago, 804 F.3d 453, 467

- 22 -

(1st Cir. 2015)).  A charge that the district court erred — pressed singularly in the "Statement of the Case" section of an appellant's brief yet not later renewed and developed in the "Argument" section — hardly offers us enough to review on appeal.  See Fed. R. App. P. 28(a) (commenting that an appellant's brief must contain both a statement of the case and appellant's argument — "under appropriate headings" — and that the argument must spell out the "appellant's contentions and the reasons for them").  Judges, after all, "are not expected to be mindreaders."  United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).  And so, because Rodríguez makes his sentencing-disparity assertion "in a perfunctory manner, unaccompanied by some effort at developed argumentation," it is "waived."  Id.

Even if Rodríguez hadn't waived his sentencing-disparity argument, it still would be unavailing.  For starters, a district court's consideration of sentencing disparity is aimed primarily at the "minimization of disparities among defendants nationally," not disparities among codefendants, and yet Rodríguez advances no such comparator argument.  United States v. Floyd, 740 F.3d 22, 39 (1st Cir. 2014) (quoting United States v. Vargas, 560 F.3d 45, 52 (1st Cir. 2009)).  Putting that aside — as to his argument that he suffered disparate treatment compared with Padilla-Pérez — the record evidence belies this contention.  The district court ably found Rodríguez to be more blameworthy than all his fellow

confederates, including Padilla-Pérez.  It found, in particular, that Rodríguez was "the maximum leader" of the conspiracy.  See USSG § 3B1.1(a) (directing four-level enhancement for organizer or leader).  Even Rodríguez's plea agreement dubs him as "the Leader" of "the Wilfredo Rodríguez-Rosado drug trafficking organization." In short, "it is too obvious to warrant citation of authority that an offender who sits at the top of a criminal hierarchy is not similarly situated to his underlings."  Floyd, 740 F.3d at 39. Thus even on the merits, we find no abuse of discretion.

### Finale

Having carefully worked our way through all the issues, with the stage curtain lowering, we *affirm* the district court's order denying Rodríguez's sentence-reduction motion.[13]

---

[13] Because we detected no abuse of discretion, and thus aren't vacating and remanding, we don't reach the question of whether a different district judge should resolve the motion.