In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-3222

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

GLENN MCDONALD,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:16-CR-00078(1) — **John Robert Blakey**, *Judge.*

ARGUED NOVEMBER 17, 2020 — DECIDED NOVEMBER 24, 2020

Before EASTERBROOK, HAMILTON, and ST. EVE, *Circuit Judges.*

ST. EVE, *Circuit Judge.* Glenn McDonald appeals his within-guidelines sentence of 156 months in prison, arguing that it is substantively unreasonable because his age and poor health make it likely that he will die there. But McDonald failed to present evidence of a shortened life expectancy to the district court, and the court otherwise considered McDonald's age and medical conditions, along with the other factors

enumerated in 18 U.S.C. § 3553(a), when it selected his sentence. We affirm.

## I.

### Background

McDonald pleaded guilty to transporting child pornography, in violation of 18 U.S.C. § 2252A(a)(1). In his plea agreement, McDonald admitted to using his computer to send two emails with video attachments containing pornography depicting children as young as five and portraying "sadistic and masochistic conduct." McDonald also admitted to using a file-sharing website to download child pornography. When searched, his hard drive contained approximately 5,000 images and 890 videos of child pornography.

A probation officer calculated a guidelines range of 151 to 188 months in prison for McDonald based on a total offense level of 34 and a criminal history category of I. The officer noted that, beyond the videos described in the plea agreement, McDonald's hard drive contained over 100 images of girls under ten in bathing suits outside his neighbor's home, and that McDonald had sent an email stating his interest in "naked kids preteen. 0 to 12yo." The officer recommended a reduction of three levels for acceptance of responsibility, even though McDonald insisted that he received emails with child pornography unintentionally and "wasn't sure" if that content was illegal because he had "assumed" the government "ran" the internet.

McDonald filed two sentencing memoranda, both arguing for a below-guidelines sentence of five years (the statutory minimum) because of his age and health. McDonald contended that "[a]ny lengthy sentence may be a death sentence"

because of his age (62 at the time of the first memo and 63 at the time of the second), his type I diabetes, and his two blocked arteries near his heart. Although he furnished no actuarial evidence of his life expectancy, he submitted medical records from 2010 and 2016 confirming that he had diabetes and a "high risk" coronary-artery calcium score.

At the sentencing hearing on October 18, 2019, the district court accepted the facts and guidelines calculation from the probation officer without objection. McDonald argued that the guidelines recommendation was a "poor fit," and he feared the "real possibility" of dying in prison if sentenced within the recommended range. McDonald asserted that, given the "90 percent blockage of his arteries" and his diabetes, even a below-guidelines sentence would be "challenging" for him.

The district court sentenced McDonald to 156 months in prison – within the guideline range of 151-188 months imprisonment. The court explained that "in most part and significant part" it based McDonald's sentence on the factors enumerated in 18 U.S.C. § 3553(a), including the guidelines range of 151 to 188 months. As mitigating factors, it acknowledged McDonald's medical reports, and it considered his age and medical conditions as "individual difficulties" that McDonald would face in custody. The court also noted how McDonald had served his family and community by caring for his parents before their deaths and by rescuing animals. But the court explained that aggravating factors countervailed. Beginning with McDonald's role in the child-pornography market, the court stressed that, although he did not produce it, McDonald "owe[d his] fair share of culpability" because he possessed and distributed large amounts of child

pornography. The court also found "significant" reasons to believe that McDonald would reoffend: He had "actively attempt[ed] to participate in an internet community that shared and distributed" child pornography by emailing members and "puffing" up his sexual desire for children as young as infants. Finally, the court considered that McDonald had photographed neighborhood children and had wavered in accepting responsibility for his offense.

## II.

### Analysis

On appeal, McDonald challenges only the substantive reasonableness of his within-guidelines sentence. McDonald argues that the district court effectively sentenced him to life in prison without adequate reason or explanation. Offering data for the first time that on average diabetes reduces a person's life expectancy by 12 years, and that a 64-year-old man's life expectancy is normally 18 years, he maintains that a sentence above the five-year statutory minimum is a de facto life sentence. (McDonald misstates his age at sentencing; he was in fact 63.) He concludes that because the court failed to mention McDonald's exact age and health issues when imposing his "life" sentence, the court did not adequately justify it.

McDonald has not shown that his within-guidelines sentence is unreasonable. To begin, we presume that a within-guidelines sentence is reasonable. *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Mykytiuk*, 415 F.3d 606, 607 (7th Cir. 2005). McDonald's argument that his life expectancy is less than his 13-year prison term does not rebut the presumption that the district court sentenced him reasonably, because he never presented this argument (let alone data for

it) to the district court. "[L]itigants generally are not allowed to bypass the district court and present evidence for the first time to the court of appeals." *United States v. Miller*, 832 F.3d 703, 704 (7th Cir. 2016) (citing Fed. R. App. P. 10(e)). True, McDonald submitted three pages of medical records. But they stated only that he had diabetes and blocked arteries; they did not opine on his life expectancy. The district court thus was not required to find that, if McDonald were to serve his full sentence, he would not be alive when released in his late-70s. A release date at that age "is not the kind of de facto life sentence that has concerned us in the past." *United States v. Dingle*, 862 F.3d 607, 613 (7th Cir. 2017) (sentence substantively reasonable where defendant would be released in his mid-80s). Without actuarial evidence in the district court of a de facto life sentence (or an excuse from McDonald for not presenting such data there), the district court cannot be faulted for sentencing him to a 13-year prison term, or not elaborating on the actuarial impact of his age and health.

Further, the actuarial data that McDonald now presents does not compel the conclusion he advances. The data shows that a man of his age is expected to live 18 more years, which is more than his sentence of 13 years. He "attempts to rely on the average reduction in life expectancy caused by diabetes, without regard to the age at which he acquired the disease or the reduction in life expectancy that accrues to a person of his age." *United States v. Wurzinger*, 467 F.3d 649, 651 n.2 (7th Cir. 2006). But an average reduction does not reliably estimate McDonald's life expectancy. "[O]lder people are closer to death and have shorter life expectancies, [so] life-threatening conditions may cause a smaller drop in life expectancy for them, simply because they have less life to lose." *Id*.

Finally, even if we assume that McDonald's sentence is effectively a life sentence, the district court adequately explained his sentence in a manner consistent with the § 3553(a) factors, which is all that was required. *See United States v. Cunningham*, 883 F.3d 690, 701–02 (7th Cir. 2018); *United States v. Volpendesto*, 746 F.3d 273, 299 (7th Cir. 2014). "[T]he probability that a convict will not live out his sentence should certainly give pause to a sentencing court." *Wurzinger*, 467 F.3d at 652. But we have upheld a de facto life sentence where the sentencing court determined that the defendant "showed a risk of recidivism and lack of respect for the law," *Volpendesto*, 746 F.3d at 299, and the court "appreciated the severity of the sentence." *United States v. Cheek*, 740 F.3d 440, 454 (7th Cir. 2014) (quoting *United States v. Patrick*, 707 F.3d 815, 819–20 (7th Cir.2013)); *see also United States v. Kincannon*, 567 F.3d 893, 901 (7th Cir. 2009). The district court did so here. In choosing his sentence, the court considered McDonald's age and health issues as "difficulties" he would face in custody. But the court found the seriousness of McDonald's conduct, his wavering acceptance of responsibility, and the substantial risk of his recidivism more "significant." *See United States v. Gross*, 437 F.3d 691, 693 (7th Cir. 2006) (distributing child pornography "is quite serious," because it "creates a market for its production, which inevitably leads to the abuse of children."); *Wurzinger*, 467 F.3d at 653 (even if "older offenders are generally less likely to commit crime," "what matters is whether the court reasonably concluded that [the defendant] in particular is a risk for further crimes"). The court's explanation of its reasons for McDonald's sentence was therefore adequate. *See Cunningham*, 883 F.3d at 701–02.

AFFIRMED