> **NONPRECEDENTIAL DISPOSITION**
> To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 12, 2021[*]
Decided March 15, 2021

**Before**

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 20-2484

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Indiana, South Bend Division. |
| *v.* | No. 3:18cr136 RLM |
| KEVIN CLINTON, *Defendant-Appellant*. | Robert L. Miller, Jr. *Judge*. |

## O R D E R

Kevin Clinton, a federal inmate in his 60s, moved for compassionate release based on his susceptibility to complications if he contracted COVID-19. The district court denied the motion. Because the court reasonably concluded that Clinton had not demonstrated extraordinary and compelling reasons to justify early release, we affirm.

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

A jury found Clinton guilty of four counts of mail fraud, 18 U.S.C. § 1341, after he created a sham business to steal over two million dollars from his employer. In October 2019, the district court sentenced him to 71 months in prison.

In June 2020, after exhausting his administrative remedies, Clinton moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A). He argued that his age (63) and health conditions increased his risk of contracting a severe case of COVID-19. He had a "large benign mass removed from the left side of his face," and he provided a letter from his physician stating that he was "at high risk for morbidity" from the virus because of elevated blood pressure and a history of bronchitis and tobacco use. The conditions at the United States Penitentiary in Thomson, Illinois, Clinton added, magnified his risk: Testing for the virus was rare, correctional officers refused to wear face masks, the prison did not provide inmates with cleaning supplies or effective soap, and maintaining social distance was impossible in the "incubator type of environment."

The district court denied the motion. It explained that Clinton's age did not place him in the highest-risk age group according to the Centers for Disease Control and Prevention. Nor did the CDC advise that Clinton's medical conditions increase a person's risk of COVID-19 complications (and his doctor did not explain the connection, either). Plus, Clinton's (fairly recent) presentence investigation report and his prison medical records reflected that he was in "reasonably good health." And although the Bureau of Prisons "struggled in its fight against COVID-19," this general concern was not unique to Clinton, and his prison reported no active cases at the time. The court also considered Clinton's good behavior in prison, his stable reentry plan, and the nonviolent nature of his offense. But it was not convinced that Clinton, who had served only a few months of a "well-earned" 71-month sentence, had been rehabilitated.

On appeal, Clinton argues that the district court did not afford enough weight to his increased vulnerability to COVID-19 based on his age and health conditions and that it downplayed the seriousness of the prison's failure to take action to prevent an outbreak of the virus. We review the court's ruling for an abuse of discretion. *See United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021).

Under 18 U.S.C. § 3582(c)(1)(A)(i), a district court, after considering the § 3553(a) sentencing factors, has the discretion to reduce a defendant's prison term for "extraordinary and compelling reasons" and if it would be consistent with any applicable policy statement of the Sentencing Commission. Although there has been no "applicable" statement since the First Step Act expanded the compassionate-release

statute, the formerly controlling statement, U.S.S.G. § 1B1.13, may continue to inform the district court's discretion. *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020).

Here, the district court did not abuse its discretion in denying Clinton's motion. First, the court properly considered the 18 U.S.C. § 3553(a) sentencing factors. The court recognized that Clinton committed a nonviolent offense, *id*. § 3553(a)(1), and posed a low risk of recidivism, *id*. § 3553(a)(2)(B), (C), but highlighted that Clinton had just begun to serve his 71-month sentence, *id*. § 3553(a)(2)(A). Second, with reference to § 1B1.13, the court explained that Clinton's medical history and his prison's COVID-19 protocol were not "extraordinary and compelling" reasons to warrant his early release. CDC guidance did not suggest that Clinton was "high risk"—Clinton offered no support for this premise, either—and his PSR and prison records reported that he was generally healthy. And the court reasonably declined to grant relief based on Clinton's doubt that the Bureau of Prisons could manage the spread of the virus, a generalized concern that could be raised by "every prisoner in America" and was not unique to Clinton's prison at the time (where no active cases were present).

Clinton also cites two new pieces of evidence—test results showing elevated blood pressure and a doctor's letter suggesting a protein deficiency in his blood. We cannot consider this new information for the first time on appeal. *See United States v. McDonald*, 981 F.3d 579, 581 (7th Cir. 2020). In any case, the district court mentioned his high blood pressure, and Clinton does not connect protein deficiency with an increased risk of COVID-19 complications (nor does the CDC guidance in his appendix).

Clinton also offers updated data showing an increased number of active cases at Thomson. But the conditions there are no longer relevant; he has since informed us in a post-briefing letter that he was moved to the Federal Correctional Institution in Milan, Michigan, and that he already contracted COVID-19. With so much having changed since Clinton first moved for release—both his location and his medical status—we understand his desire to provide current information. But only the district courts are empowered to address compassionate-release requests in the first instance. We can do no more than review the district court's ruling based on the information it had at the time. *United States v. Howell*, 958 F.3d 589, 595 (7th Cir. 2020).

AFFIRMED